*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0263p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NORTH FORK COAL CORPORATION,

                     *Petitioner,*

    *v.*

FEDERAL MINE SAFETY AND HEALTH REVIEW
COMMISSION; SECRETARY OF LABOR; MARK
GRAY,

                     *Respondents.*

Nos. 11-3398/3684

On Petition for Review from the
Federal Mine Safety and Health Review Commission.
No. Kent 2009-1429-D.

Argued: July 19, 2012

Decided and Filed: August 14, 2012

Before: SUTTON and GRIFFIN, Circuit Judges; and HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen M. Hodges, PENN, STUART & ESKRIDGE, Abingdon, Virginia,
for Petitioner. Robin Rosenbluth, UNITED STATES DEPARTMENT OF LABOR,
Arlington, Virginia, for Respondents. **ON BRIEF:** Stephen M. Hodges, Timothy W.
Gresham, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Petitioner. Robin
Rosenbluth, UNITED STATES DEPARTMENT OF LABOR, Arlington, Virginia, Tony
Oppegard, Lexington, Kentucky, Wes Addington, APPALACHIAN CITIZENS LAW
CENTER, INC., Whitesburg, Kentucky, for Respondents.

     GRIFFIN, J., delivered the opinion of the court, in which SUTTON, J. and
HOOD, D. J., joined. SUTTON, J. (pp. 13–16), delivered a separate concurring opinion.

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of
Kentucky, sitting by designation.

———————

**OPINION**

———————

GRIFFIN, Circuit Judge.   This case involves a complaint of employment discrimination filed by Mark Gray with the Secretary of Labor ("Secretary") pursuant to the Federal Mine Safety and Health Act of 1977 (the "Mine Act" or "Act"), as amended, 30 U.S.C. §§ 801 - 965. Following a determination that Gray's complaint was not "frivolously brought," Gray was granted temporary reinstatement.   30 U.S.C. § 815(c)(2).  Thereafter, following an investigation of Gray's allegations, the Secretary determined that a violation of the Mine Act had not occurred.   Accordingly, the Secretary denied Gray's complaint, concluding that a discrimination action on Gray's behalf was not warranted.   The instant case presents the issue of first impression of whether the Mine Act mandates that an employee's temporary reinstatement continue after the Secretary determines that his complaint lacks merit.   We hold that the Mine Act does not require such continued temporary reinstatement.

I.

In 1977, the Mine Act was enacted to address the "urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal [and] other mines in order to prevent death and serious physical harm[.]" 30 U.S.C. § 801(c).   One important provision of the Act prohibits employment discrimination as a reprisal for making safety-related complaints.  *Id.* § 815(c)(1).  This prohibition was intended to encourage miners to play an "active part in the enforcement of the Act" and protect them "against any possible discrimination which they might suffer as a result of their participation."  S. Rep. No. 95-181, at 35 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3401, 3435.

Under the Mine Act, a miner believing that he was subjected to prohibited employment discrimination may file a complaint with the Secretary.   30 U.S.C. § 815(c)(2).  If the Secretary determines that the complaint is not "frivolously brought,"

she must request the Federal Mine Safety and Health Review Commission (the "Commission") to order the miner's temporary reinstatement "pending final order on the complaint." *Id.* Thereafter, the Secretary conducts an investigation to determine whether she will pursue the discrimination complaint on behalf of the miner. *Id.* If the Secretary finds that no Mine Act violation occurred, the miner may bring an action on his or her own behalf. *Id.* § 815(c)(3). Under either circumstance, the merits of the miner's discrimination complaint is resolved by an administrative law judge ("ALJ"), with further discretionary review provided by the Commission. 29 C.F.R. §§ 2700.69, 2700.70. Parties aggrieved by the Commission's final order may seek additional review in the federal courts of appeals. 30 U.S.C. § 816.

## II.

On May 15, 2009, North Fork Coal Corporation ("North Fork") fired Mark Gray, a roof bolter employed in its No. 4 mine. Gray thereafter filed a discrimination complaint with the Secretary, alleging he was terminated for making safety-related complaints. Finding that Gray's complaint was not "frivolously brought," the Secretary filed an application for his temporary reinstatement, and an ALJ granted the request. The parties jointly requested that Gray's reinstatement be economic, foregoing his return to the mine.

Following her investigation into Gray's termination, the Secretary informed the ALJ that she would not be pursuing the discrimination complaint. Soon thereafter, the ALJ issued an order dissolving Gray's temporary reinstatement. On December 30, 2009, Gray filed a discrimination action on his own behalf.

On January 8, 2010, the Commission granted discretionary review of the ALJ's dissolution of Gray's temporary reinstatement. Thereafter, in a split decision, the Commission reversed the ALJ's order, holding that temporary reinstatement was required to continue until Gray's individual action was resolved by final order. Two commissioners based this holding on the plain language of § 815(c), while a concurring third commissioner found § 815(c) to be ambiguous, requiring deference to the interpretation of the Secretary. The two dissenting commissioners asserted that the plain

language of § 815(c) required the dissolution of temporary reinstatement when the Secretary decided not to pursue the miner's complaint.   North Fork thereafter filed a petition for review before this court.

### III.

"The standard under which [we review] the Commission's order is governed by the Mine Act and general administrative law principles[.]" *Pendley v. Fed. Mine Safety & Health Review Comm'n*, 601 F.3d 417, 422 (6th Cir. 2010).   "[We review] the Commission's decision and not the underlying decision of the ALJ[.]" *Id.* Questions of law are reviewed de novo. *Id.* at 423.   When in conflict, the Secretary's reasonable interpretation supercedes that of the Commission. *Id.* at 423 n.2 (citing *Sec'y of Labor ex rel. Bushnell v. Cannelton Indus.*, 867 F.2d 1432, 1435 (D.C. Cir. 1989)).

When reviewing an agency's interpretation of statutory language, we are presented with two questions.   "First, always, is the question whether Congress has directly spoken to the precise question at issue.   If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).   However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

### IV.

Section 815(c)(2) states in relevant part:

> Any miner . . . who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may, within 60 days after such violation occurs, file a complaint with the Secretary alleging such discrimination.  Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate.  Such investigation shall commence within 15 days of the Secretary's receipt of the complaint, and if the Secretary finds that such complaint was not frivolously brought, the Commission, on an expedited basis upon application of the Secretary, shall order the immediate

reinstatement of the miner *pending final order on the complaint*.  If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall immediately file a complaint with the Commission, with service upon the alleged violator and the miner, applicant for employment, or representative of miners alleging such discrimination or interference and propose an order granting appropriate relief.  The Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section) and thereafter shall issue an order, based upon findings of fact, affirming, modifying, or vacating the Secretary's proposed order, or directing other appropriate relief.

30 U.S.C. § 815(c)(2) (emphasis added).  Also relevant to this petition is § 815(c)(3), which provides:

Within 90 days of the receipt of a complaint filed under paragraph (2), the Secretary shall notify, in writing, the miner, applicant for employment, or representative of miners of his determination whether a violation has occurred.  If the Secretary, upon investigation, determines that the provisions of this subsection have not been violated, the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission, charging discrimination or interference in violation of paragraph (1). The Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section), and thereafter shall issue an order, based upon findings of fact, dismissing or sustaining the complainant's charges and, if the charges are sustained, granting such relief as it deems appropriate. . . . Proceedings under this section shall be expedited by the Secretary and the Commission.  Any order issued by the Commission under this paragraph shall be subject to judicial review in accordance with section 816 of this title.

*Id.* § 815(c)(3).  This case turns on the proper interpretation of the phrase "pending final order on the complaint" contained in § 815(c)(2).  The Secretary reads the term "complaint" to mean the miner's underlying discrimination complaint, whether it is litigated by the Secretary under § 815(c)(2) or the miner under § 815(c)(3). North Fork asserts that the term "complaint" refers to that filed by the Secretary before the Commission, and not to the separate "action" filed by the miner under § 815(c)(3).

From 1978 to 2006, the Code of Federal Regulations provided: "If, following an order of temporary reinstatement, the Secretary determines that the provisions of section 105(c)(1), 30 U.S.C. § 815(c)(1), have not been violated, the Judge shall be so notified and shall enter an order dissolving the order of reinstatement." 29 C.F.R. § 2700.45(g) (1999). Without any serious controversy, this practice was followed for 27 years. In 2006, however, the Commission deleted this portion of the regulation. In explaining the change, the Commission noted that the Secretary believed § 815(c)(2) should be interpreted to require temporary reinstatement "even when the Secretary determines that there was no violation of section 105(c) of the Mine Act." 71 Fed. Reg. 44,190, 44,198 (Aug. 4, 2006). In response, the Commission decided to delete the regulatory reference to temporary reinstatement, leaving the matter to "be resolved in litigation." *Id.* at 44,199. Since then, no court of appeals has addressed this issue.

V.

First, we conclude that the phrase "pending final order on the complaint" does not have a plain meaning because it is subject to more than one reasonable interpretation. Indeed, this fact is demonstrated by the split decision of the Commission and the reasonable competing interpretations offered by the parties. *See Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 (11th Cir. 2008) ("Although both parties argue that the statutory language is plain and unambiguous, both also argue that the plain meaning supports their interpretation. This indicates ambiguity. Furthermore, the existence of divergent court opinions also suggests ambiguity." (citing *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 739 (1996))).

The operative words of the phrase at issue are "order" and "complaint." The parties agree that the term "order" refers to the final order of the Commission. However, when the Secretary decides not to pursue a miner's claim before the Commission, § 815(c)(3) refers to that decision as a "determination," not an "order." Accordingly, when the Secretary finds that a violation of the Mine Act has not occurred, there is no "final order" triggering the dissolution of temporary reinstatement.

This interpretation, however, is not without its problems.   As North Fork emphasizes, in the event that the Secretary determines that no Mine Act violation has occurred, and the miner decides not to pursue an individual action under § 815(c)(3), there is nothing in the Mine Act providing for a "final order."   While the Secretary asserts that a mine operator could request a final order from the Commission, the Act provides no such procedure.

The word "complaint" is also subject to two reasonable interpretations in this context.   On the one hand, the ability of the miner to pursue a civil action on his or her own behalf is set forth in § 815(c)(3).   In this subsection, the miner is referred to as filing an "action," not a "complaint."   *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each.").   On the other hand, the miner is referred to in § 815(c)(3) as the "complainant," signifying a relationship between the "complaint" referenced in § 815(c)(2), and the miner's "action" referenced in § 815(c)(3).

With regard to statutory structure, the fact that the miner's individual action is set forth in a different subsection than that providing for temporary reinstatement supports the interpretation advanced by North Fork.   Indeed, § 815(c)(3) does not reference temporary reinstatement.   *Id.* at 23 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted, alteration in original)). However, there are provisions in § 815(c)(3) that clearly apply to § 815(c)(2), indicating an interrelationship between these subsections.   For example, North Fork does not dispute that the expedited-proceedings requirement, mentioned only in § 815(c)(3), applies to actions pursued under §§ 815(c)(2) and (3).   The same applies for the right to obtain review from the federal courts of appeals.

In sum, the phrase "pending final order on the complaint" does not have a plain, unambiguous meaning under the circumstances presented in this case.   Accordingly, further analysis is necessary.

VI.

In the absence of a plain meaning, we must determine the most reasonable interpretation of the statutory language at issue, giving deference to the interpretation presented by the Secretary. *Pendley*, 601 F.3d at 423. In this case, the parties dispute the level of deference required, with North Fork asserting that no deference is due and the Secretary advocating for *Chevron* deference.

"Under the 'split-enforcement' arrangement envisioned by the [Mine] Act, the Secretary and the Commission perform distinct regulatory responsibilities." *Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996).

> The Act charges the Secretary with the development and enforcement of health and safety standards "for the protection of life and prevention of injuries in coal or other mines." 30 U.S.C. § 811(a). The Secretary develops these standards by rulemaking, *id.*, and enforces them by conducting inspections, issuing citations and proposing civil penalties for violations, 30 U.S.C. §§ 813, 814(a), 815(a), 820(a). If a party contests the Secretary's actions, the Commission adjudicates the claims and "issue[s] an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation, order, or proposed penalty, or directing other appropriate relief."

*Id.* at 113-14. "[D]eveloping rules and enforcing them endow the Secretary with . . . 'historical familiarity and policymaking expertise[.]'" *Id.* at 114 (quoting *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 153 (1991)). Accordingly, "'the Secretary's interpretations of the law and regulations shall be given weight by both the Commission and the courts.'" *Id.* (quoting S. Rep. No. 181, at 49 (1977)); *see also Chevron*, 467 U.S. at 844 ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer[.]").

Primarily, North Fork asserts that the Secretary is entitled to no deference because her interpretation in this case is a mere "litigation position." We disagree. In this regard, we agree with the D.C. Circuit Court of Appeals that "the Secretary's litigating position before [the Commission] is as much an exercise of delegated

lawmaking powers as is the Secretary's promulgation of a . . . health and safety standard." *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 6 (D.C. Cir. 2003) (internal quotation marks and citation omitted). Indeed, in a similar context, the Supreme Court has held that litigating positions are entitled to deference when they are not "*post hoc* rationalization[s]" of previous agency actions. *Martin*, 499 U.S. at 156-57. In this case, the Secretary is not justifying her previous actions. Rather, she is applying her expertise in advocating for a particular interpretation of the Mine Act.

Next, North Fork asserts that the Secretary is not entitled to deference because she is not directly involved in the miner's "action" pursued under § 815(c)(3). This argument is easily rejected. Enforcement of the Mine Act is the responsibility of the Secretary. *Mutual Mining*, 80 F.3d at 113. And, the Secretary has a strong interest in ensuring that all provisions of the Act are interpreted correctly to protect miner safety. Because the Secretary herself is not pursuing an action on behalf of a miner does not mean she is not "charged with . . . administering" the Mine Act. *Chevron*, 467 U.S. at 865.[1]

While deference is due, our precedent precludes the application of full *Chevron* deference in this case. In *Chao v. Occupational Safety & Health Review Commission*, 540 F.3d 519 (6th Cir. 2008), we stated that *Chevron* deference "is not required where the interpretation is offered via an informal medium—such as an opinion letter, agency manual, policy statement, or enforcement guideline—that lacks the force of law." *Id.* at 527 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). Because the Secretary's interpretation in *Chao* was a litigation position, we held that it was entitled to *Skidmore* deference, only. *Id.* at 526-27 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Similarly, in the present case, because the Secretary's interpretation has been offered in litigation, it is afforded no more than *Skidmore* deference. While *Chao* was

---

[1]Indeed, *Chevron* did not "parse an agency's statutory authority provision by provision when articulating the general principles underlying the deference doctrine[.]" *Phillips v. A&S Constr. Co.*, 31 FMSHRC 975, 1003 (2009).

decided in the context of the Occupational Safety and Health Act of 1970 ("OSH Act"), we note that the OSH Act is "nearly identical" to the Mine Act with regard to administrative and judicial review procedures. *See Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 872-73 (D.C. Cir. 2002) (internal quotation marks omitted).

## VII.

Under *Skidmore*, the Secretary's position is afforded deference to the extent it has the "power to persuade." *Skidmore*, 323 U.S. at 140. "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all [other relevant] factors[.]" *Id.* In this case, we conclude that the position advanced by the Secretary is not persuasive. Indeed, her position is inconsistent with over 27 years of accepted practice under an unaltered statute. When all relevant factors are considered, we hold that the most reasonable interpretation of the Mine Act is that the order of temporary reinstatement dissolves when the Secretary determines that no violation has occurred.

First, while the statutory language at issue does not have a plain meaning, several of our traditional rules of statutory construction strongly favor the dissolution of temporary reinstatement upon the Secretary's determination of no violation. The operative phrase, located in § 815(c)(2), provides that temporary reinstatement shall continue "pending final order on the complaint." Section 815(c)(3), however, does not refer to a miner's "complaint." Rather, § 815(c)(3) allows a miner to pursue his "charges" in an individual "action." We presume that Congress's choice of language was purposeful. *See Russello*, 464 U.S. at 23.

The miner's individual "action" is set forth in a different subsection than the one describing the "complaint" investigated and pursued by the Secretary. Moreover, § 815(c)(3) does not address temporary reinstatement. Once again, we presume that this choice in statutory structure was intentional, indicating that temporary reinstatement is not appropriate when a miner pursues an individual "action" under § 815(c)(3). *See id.*; *see also United States v. Graham*, 608 F.3d 164, 176 (4th Cir. 2010) ("[W]e cannot

construe [statutes] to add language that Congress omitted."); *In re Burns*, 322 F.3d 421, 427 (6th Cir. 2003) (affording interpretive significance to the fact that different forms of relief are set forth in separate sections of the bankruptcy code).

In addition, the legislative history favors the dissolution of temporary reinstatement when the Secretary determines that no violation of the Mine Act occurred. *See United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) ("If the statutory language is not clear, we may examine the relevant legislative history."). The House Conference Report provides:

> To protect miners from the adverse and chilling effect of loss of employment *while such matters are being investigated*, the Senate bill provided that if the Secretary determined that any such complaint was not frivolously brought, the Secretary seek temporary reinstatement of the complaining miner *pending final outcome of the investigation* and the Commission [shall] order such reinstatement, after expedited proceedings.

H.R. Rep. No. 95-655, at 52 (1977) (Conf. Rep.) (emphases added). This language indicates that temporary reinstatement is appropriate only during the Secretary's investigation as set forth in § 815(c)(2). While the Senate Report indicates that temporary reinstatement is to remain in effect "pending final outcome of the *investigation and complaint*," S. Rep. No. 95-181, at 37 (1977) (emphasis added), this language does not touch upon the miner's individual "action" as set forth in § 815(c)(3).

Other factors also support our holding. First, we assume that Congress was aware of the Commission's 27-year accepted practice of dissolving temporary reinstatement following the Secretary's determination of no Mine Act violation. Nevertheless, during this 27-year period, we note that nothing was done to extend reinstatement past this stage. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (noting that inaction by Congress to alter statutory provisions indicated that the current statutory construction was permissible). In fact, legislation proposed by both chambers in 2011 would have provided for temporary reinstatement during the pendency of the miner's individual "action." *See* S. 153, 112th Cong. § 401 (2011); H.R. 1579, 112th Cong. § 401 (2011). However, this proposed legislation has not been enacted.

Finally, in view of the Commission's long-standing practice of dissolving temporary reinstatement when the Secretary decides not to pursue the miner's discrimination complaint, the Secretary's current position is entitled to less deference. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." (internal quotation marks omitted)). From the enactment of the Mine Act in 1977, until 2006, the Secretary accepted the Commission's practice and did not challenge the requirement that temporary reinstatement cease upon her determination of no Mine Act violation. *Cf. Energy W. Mining Co. v. Fed. Mine Safety & Health Review Comm'n*, 40 F.3d 457, 463 (D.C. Cir. 1994) (finding that the Secretary's "consistently maintained interpretation" of a Mine Act regulation was entitled to deference).

For these reasons, we conclude that the Secretary's interpretation of the temporary reinstatement provision does not have the "power to persuade." Rather, the statutory language and structure, legislative history, and other relevant factors demonstrate Congress's judgment that once the Secretary determines that no violation of the Mine Act has occurred, the public interest in mandating continued reinstatement is substantially lessened. Accordingly, we hold that upon the Secretary's determination that discrimination in violation of the Mine Act has not occurred, a miner is no longer entitled to temporary reinstatement.[2]

## VIII.

For the foregoing reasons, we grant the petition for review and reverse the order of the Commission.

---

[2]North Fork also asserts that continued reinstatement, past the Secretary's determination of no Mine Act violation, violates procedural due process. However, because we have already determined that the Commission's order must be reversed, we need not address this issue.

———————————

## CONCURRENCE

———————————

SUTTON, J., concurring.  I join Judge Griffin's thorough opinion and write separately to make one point:  The proper standard of review—whether under *Skidmore* or *Chevron*—makes no difference, as the relevant language of the statute defeats the Secretary's argument either way.

The relevant language appears in two subsections.  One says in relevant part:

Any miner . . . who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may, within 60 days after such violation occurs, file a complaint with the Secretary alleging such discrimination.  Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate.  Such investigation shall commence within 15 days of the Secretary's receipt of the complaint, and if the Secretary finds that such complaint was not frivolously brought, the Commission, on an expedited basis upon application of the Secretary, shall order the immediate reinstatement of the miner pending final order on the complaint.  If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall immediately file a complaint with the Commission, with service upon the alleged violator and the miner, applicant for employment, or representative of miners alleging such discrimination or interference and propose an order granting appropriate relief.  The Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section) and thereafter shall issue an order, based upon findings of fact, affirming, modifying, or vacating the Secretary's proposed order, or directing other appropriate relief.

30 U.S.C. § 815(c)(2).

The other says in relevant part:

Within 90 days of the receipt of a complaint filed under paragraph (2), the Secretary shall notify, in writing, the miner, applicant for employment, or representative of miners of his determination whether a violation has occurred.  If the Secretary, upon investigation, determines that the provisions of this subsection have not been violated, the

complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission, charging discrimination or interference in violation of paragraph (1). The Commission shall afford an opportunity for a hearing (in accordance with section 554 of Title 5 but without regard to subsection (a)(3) of such section), and thereafter shall issue an order, based upon findings of fact, dismissing or sustaining the complainant's charges and, if the charges are sustained, granting such relief as it deems appropriate. . . . Proceedings under this section shall be expedited by the Secretary and the Commission.  Any order issued by the Commission under this paragraph shall be subject to judicial review in accordance with section 816 of this title.

*Id.* § 815(c)(3).

The basic idea is that, if a miner files a whistle-blower complaint against his employer and if the Secretary determines that the complaint is not "frivolously brought," the Commission, on application of the Secretary, shall "order the immediate reinstatement of the miner pending final order on the complaint." *Id.* § 815(c)(2).  All agree that the reinstatement lasts at least through the Secretary's subsequent investigation of the complaint.  And all agree that, if the Secretary's investigation reveals a violation of the Act, the reinstatement lasts through the Commission's resolution of the Secretary's complaint and any hearing concerning that complaint.

What happens, however, if the Secretary "determines that the provisions of this subsection have not been violated"? *Id.* § 815(c)(3).  The next subsection accounts for that possibility and permits the miner "to file an action in his own behalf before the Commission." *Id.*  Should the miner's immediate reinstatement continue through this separate action?  I think not—for at least three reasons.

*First*, the distinct subsection that permits the miner to file his own action with the Commission says nothing about reinstatement during that proceeding.  Ample reason exists for that silence, for a failure to carry over the immediate-reinstatement requirement from one proceeding to the other.  It is difficult to understand why Congress would favor reinstatement *after* the Secretary has found the miner's complaint to lack merit.  It is one thing to require a coal company to continue to employ a miner after the

Secretary determines that the discrimination complaint was not frivolously filed. It is quite another to do so after the Secretary determines that the complaint has no merit. It is quite possible, indeed, that the Secretary's investigation will uncover not just that the complaint is meritless but that it is frivolous to boot, making it exceedingly odd to preserve the reinstatement even after the body given authority over this threshold determination finds that it no longer exists.

*Second*, the two types of proceedings not only appear in distinct subsections of the statute but they also use distinct language. The initial proceeding in § 815(c)(2)—the one that permits reinstatement if not "frivolously brought"—refers to a "complaint" filed "with the Secretary." The second proceeding in § 815(c)(3)—the one that says nothing about reinstatement—refers to an "action" filed "before the Commission." Congress thus described the two proceedings in different ways (complaint versus action), directed the miner to file them in different places (the Secretary versus the Commission), explained that they were filed for different purposes (for the Secretary's investigation versus on the miner's own behalf for the Commission's resolution) and mentioned reinstatement in one place but not in the other. Different words in different places mean different things.

*Third*, these differences make sense when measured against the background principles for granting interim relief. The norm is that the mere filing of a complaint against an employer, the government or anyone else does not by itself revert the parties' legal relationship. Unless the plaintiff seeks a preliminary injunction or something similar—and meets the requirements for doing so, including showing a probability of success—the norm is to leave things as they are during the resolution of the complaint. Congress altered that custom here by permitting a reversion merely if the complaint was not frivolously brought. That makes sense in the context of this whistle-blower statute. What does not make sense is to construe Congress's silence in the second type of action as altering this background norm and as doing so even after the Secretary finds no merit to the complaint. I could see construing this silence in § 815(c)(3) as preserving the background norm—that the employee could seek continued reinstatement based on the

traditional grounds for doing so (likelihood of success, irreparable harm and so on). But I cannot see it as carrying over a unique reinstatement provision to a unique action.

If we accept the Secretary's new approach to the statute, moreover, what miner would not file an action with the Commission? And what lawyer would not recommend that very thing? The mere filing of the action, no matter how non-meritorious or even frivolous at that point in time, would ensure continued reinstatement through the end of the proceeding. That is no small matter in proceedings that can last as long as this one has—thirty-five months and counting since the reinstatement. "And counting," I say, not for rhetorical flourish but because, if the Secretary is right, the reinstatement continues through all appeals—from the Secretary's decision, the ALJ's decision, the Commission's decision, the Court of Appeals' decision, all the way to a certiorari petition to the United States Supreme Court. Nor does the statute provide any basis for recovering any of these costs if the Commission ultimately rejects the claim. Such a system not only would implicate due process concerns, but it might well violate them in some settings. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490 (3d Cir. 1980). Far better, it seems to me, to avoid this peril by treating the two types of proceedings as distinct, just as the distinct language in the two subsections indicates and just as the Secretary construed the statute for the first twenty-seven years of its existence.