RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0086p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

SCOTT A. HARDIN,

> *Plaintiff-Appellant,*

*v.*

No. 20-6380

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, an agency of the Department of Justice; STEVEN M. DETTELBACH, Director Bureau of Alcohol, Tobacco, Firearms, and Explosives; UNITED STATES OF AMERICA; MERRICK B. GARLAND, Attorney General, in his official capacity as Attorney General of the United States,

> *Defendants-Appellees.*

─────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:19-cv-00056—David J. Hale, District Judge.

Argued: January 19, 2023

Decided and Filed: April 25, 2023

Before: GILMAN, McKEAGUE, and BUSH, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Jason Todd Hardin, HARDIN LAW, PLLC, Louisville, Kentucky, for Appellant. Brad Hinshelwood, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Jason Todd Hardin, HARDIN LAW, PLLC, Louisville, Kentucky, J. Allan Cobb, COBB LAW PLLC, Louisville, Kentucky, for Appellant. Brad Hinshelwood, Abby C. Wright, Kyle Edwards, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

GILMAN, J., delivered the opinion of the court in which McKEAGUE, J., joined. BUSH, J. (pp. 10–13), delivered a separate opinion concurring in the judgment.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.   The placement of a bump stock on a semiautomatic rifle causes the rifle to function essentially like a machinegun by dramatically increasing the rate of fire.  And the possession of a machinegun is a criminal offense under the Gun Control Act of 1968.  This raises the question of whether a bump stock is a machinegun "part" as defined by the National Firearms Act of 1934.  The question is a close one on which reasonable jurists have disagreed, a disagreement caused by ambiguities in how the applicable statute defines the term "machinegun."

An Act of Congress could clear up the ambiguities, but so far Congress has failed to act.  The Bureau of Alcohol, Tobacco, Firearms and Explosives (the ATF) has been on both sides of this issue, with its current regulation (the Rule) banning bump stocks as a machinegun part.  In this situation, the rule of lenity that is applicable to criminal offenses requires us to rule in favor of Hardin.  We therefore **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

The Gun Control Act provides that "it shall be unlawful for any person to transfer or possess a machinegun."   18 U.S.C. § 922(o)(1).   It incorporates by reference (*see id.* § 921(a)(24)) the definition of a machinegun as set forth in the National Firearms Act, which reads as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

For over a decade, the ATF, to which Congress has delegated the authority to administer the National Firearms Act and the Gun Control Act, maintained that a bump stock is not a machinegun part. But in 2018, after a gunman in Las Vegas, Nevada used bump stocks attached to semiautomatic rifles to kill 58 people and injure roughly 500 more in the span of approximately 10 minutes, the ATF reversed its position by promulgating the Rule. The Rule gave possessors of bump stocks 90 days from its effective date during which to destroy or abandon their bump stocks, after which they would be in violation of the Gun Control Act's prohibition on machineguns and their parts. *See* Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018).

The appellant in this case, Scott Hardin, owned several bump stocks. Following the ATF's promulgation of the Rule, Hardin brought an action in the Western District of Kentucky, challenging the Rule as exceeding the ATF's statutory authority. The district court granted the ATF's motion for judgment on the administrative record. Hardin now appeals.

## II. ANALYSIS

Whether a bump stock is a machinegun part depends on how one interprets the definition of a machinegun as set forth in the National Firearms Act. In particular, the dispute focuses on the words "automatically" and "a single function of the trigger." Those courts of appeals that have faced the issue are divided on the answer, and the Supreme Court has not weighed in. On one side, saying that a bump stock is included within the definition of a machinegun, are the Tenth Circuit and the D.C. Circuit. *See Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020), *aff'g* 374 F. Supp. 3d 1145 (D. Utah 2019), *en banc reh'g order vacated as improvidently granted*, 989 F.3d 890 (10th Cir. 2021) (en banc), *cert. denied*, 143 S. Ct. 84 (2022); *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1 (D.C. Cir. 2019) (per curiam), *aff'g* 356 F. Supp. 3d 109 (D.D.C. 2019), *cert. denied*, 140 S. Ct. 789 (2020). The opposite view is taken by the Fifth Circuit. *See Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc), *rev'g* 20 F.4th 1004 (5th Cir. 2021), *and Cargill v. Barr*, 502 F. Supp. 3d 1163 (W.D. Tex. 2020), *petition for cert. filed* (Apr. 7, 2023). And our own circuit is split down the middle, with eight judges voting to uphold the Rule and eight judges voting to strike it down. *See Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890 (6th Cir. 2021) (en banc), *vacating by an equally divided*

*court* 992 F.3d 446 (6th Cir. 2021), *and aff'g by an equally divided court Gun Owners of Am., Inc. v. Barr*, 363 F. Supp. 3d 823 (W.D. Mich. 2019), *cert. denied*, 143 S. Ct. 83 (2022).

A total of 22 opinions are set forth in the above-cited cases, which fully explore all aspects of the issue in nearly 350 pages of text. We therefore have the benefit of being able to draw our own conclusions from these erudite opinions without having to repeat them verbatim.

**A.   The weight of authority concludes that the definition of a machinegun is ambiguous as applied to a bump stock**

Hardin argues that the statutory definition of a machinegun unambiguously excludes bump stocks, whereas the ATF argues that the best reading of the statute compels the opposite conclusion. Without repeating the intricacies of those positions here, there can be no doubt that a significant number of reasonable jurists have reached diametrically opposed conclusions as to whether the definition of a machinegun includes a bump stock.

The viability of competing interpretations is exemplified not only by the myriad and conflicting judicial opinions on this issue, but also by the ATF's own flip-flop in its position. And because the statute is "subject to more than one reasonable interpretation," it is ambiguous. *See Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 256 (6th Cir. 2020) (quoting *N. Fork Coal Corp. v. Fed. Mine Safety & Health Comm'n*, 691 F.3d 735, 740 (6th Cir. 2012)); *see also N. Fork Coal Corp.*, 691 F.3d at 740 ("Although both parties argue that the statutory language is plain and unambiguous, both also argue that the plain meaning supports their interpretation. This indicates ambiguity. Furthermore, the existence of divergent court opinions also suggests ambiguity." (quoting *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 (11th Cir. 2008))).

**B.   The *Chevron* doctrine is inapplicable in the present case**

Under what has become known as *Chevron* deference, "a court review[ing] an agency's construction of the statute which it administers . . . is confronted with two questions." *Chevron, USA, Inc. v. NRDC*, 467 U.S. 837, 842 (1984):

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not

directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842-43. Having determined that the statutory language is ambiguous, we would typically apply *Chevron* deference to uphold the Rule so long as it was not "arbitrary, capricious, or manifestly contrary to the statute." *See id.* at 844.

But both parties urge us to determine the legality of the Rule without relying on *Chevron* deference. The government has not invoked *Chevron* deference, believing that "it is unnecessary to consider what level of deference, if any, the rule should be accorded." And Hardin's view is, first, that the government has waived the application of *Chevron* deference and, alternatively, that *Chevron* deference is inapplicable when the underlying statute carries the possibility of criminal sanctions. We need not resolve the question of whether the government can waive the application of *Chevron* deference because we conclude that the statutory scheme before us is one that does not warrant the application of such deference.

The Supreme Court has not clearly identified the bounds of *Chevron* deference with respect to an agency's construction of a statute with criminal applications. To be sure, *Chevron* itself involved a statute whose violation could incur criminal penalties. *See id.* at 840; 42 U.S.C. § 7413(c)(1) (1982). And in *Babbitt v. Sweet Home Chapter of Communities for a Greater Oregon*, 515 U.S. 687 (1995), the Supreme Court applied *Chevron* deference to the agency's statutory interpretation notwithstanding the challengers' argument that such deference was inappropriate because the statute included criminal penalties for certain violations. *See id.* at 703-704 & 704 n.18.

The Supreme Court, however, has "never held that the Government's reading of a criminal statute is entitled to any deference." *United States v. Apel*, 571 U.S. 359, 369 (2014). This language was repeated in *Abramski v. United States*, 573 U.S. 169, 191 (2014), where the Supreme Court further noted that "criminal laws are for courts, not for the Government, to construe."

The reasons to exercise caution in applying *Chevron* deference to an agency's construction of a statute with criminal applications are persuasive. Among the primary rationales for *Chevron* deference are: (1) "that agencies are more likely to get the answer right, given their expertise," *Arangure v. Whitaker*, 911 F.3d 333, 341 (6th Cir. 2018), and (2) "that 'policy choices' should be left to Executive Branch officials 'directly accountable to the people,'" *Epic Sys. Corp. v Lewis*, 138 S. Ct. 1612, 1630 (2018) (quoting *Chevron*, 467 U.S. at 865).

These rationales, however, have less force in the context of laws imposing criminal sanctions. "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures . . . should define criminal activity." *United States v. Bass*, 404 U.S. 336, 348 (1971). Moreover, we "feel deep discomfort at allowing an agency to define the very criminal rules it will enforce." *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021) (Tymkovich, J., dissenting from the denial of rehearing en banc). Such a scheme "raises serious constitutional concerns by making [the] ATF the expositor, executor, *and* interpreter of criminal laws." *Id.* (emphasis in original).

On the other hand, "we must interpret [a] statute consistently, whether we encounter its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *see also, e.g.*, *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18 (1992) (applying a rule of statutory construction that is ordinarily applicable only in criminal cases to a tax statute because the statute, which also had criminal applications, had to be interpreted consistently across both the civil and criminal domains). A bright-line rule that *Chevron* deference cannot be applied to agency constructions of statutes with criminal consequences would therefore preclude the application of *Chevron* deference to "statutes that bear both civil and criminal applications," "[a] category that covers a great many (most?) federal statutes today." *See Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1156 (10th Cir. 2016) (Gorsuch, J., concurring); *see also Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 924-25 (6th Cir. 2021) (en banc) (Murphy, J., in support of striking down the Rule) ("[A]ny distinction between 'pure' criminal laws and 'hybrid' civil-criminal laws is a mirage."). In light of the "one statute, one interpretation rule" gleaned from *Leocal* and *Thompson*, as well as the Supreme Court's lack of

clarity with respect to the application of *Chevron* deference to statutes that carry criminal penalties, we decline to adopt such bright-line rules in either direction.

Instead, we conclude that the particular statutory scheme before us is not an appropriate one to apply *Chevron* deference. We so hold because the statutory scheme is predominantly criminal in scope and because of the nature of the actions that it criminalizes.

First, the Gun Control Act prohibits anyone from transferring or possessing a machinegun. 18 U.S.C. § 922(o)(1). A knowing violation of this provision is punishable by up to 10 years of imprisonment. *Id.* § 924(a)(2). The civil implications of the Rule are, by contrast, "quite limited." *Aposhian*, 989 F.3d at 905 (Eid, J., dissenting from the denial of rehearing en banc):

> The [Gun Control Act's] prohibition on "machineguns" is subject to only two extremely limited exceptions, for "machineguns" (1) "transfer[red] to or by, or possess[ed] by or under the authority of" the federal or a state government, [18 U.S.C.] § 922(o)(2)(A), or (2) lawfully possessed before the prohibition went into effect, *id.* § 922(o)(2)(B). Only "machineguns" that fall within these narrow exceptions are subject to civil consequences, and even then, the civil consequences are limited—the chief consequence is a registration requirement. *See* 26 U.S.C. §§ 5841, 5845(a), (b).

*Id.* (second and third alterations in original). Thus, "[g]iven the breadth of the criminal prohibition and the limited nature of the exceptions giving rise to civil ramifications," *id.*, we conclude that the statutory scheme has a predominantly criminal scope.

Second, we perceive of no special expertise possessed by the ATF with respect to the construction of this statutory scheme that the judiciary lacks:

> The special deference required by *Chevron* is based on the expertise of an administrative agency in a complex field of regulation with nuances perhaps unfamiliar to the federal courts. Unlike environmental regulation or occupational safety, criminal law and the interpretation of criminal statutes is the bread and butter of the work of federal courts.

*Dolfi v. Pontesso*, 156 F.3d 696, 700 (6th Cir. 1998) (citation omitted). As noted by our colleague Judge White, "we have highly technical and complex securities, tax, workplace safety, and environmental-law regimes in which the applicable agency exercises delegated authority to

promulgate regulations fleshing out statutory provisions—regulations that have both civil and criminal applications." *Gun Owners of Am., Inc.*, 19 F.4th at 902 (White, J., in support of upholding the Rule). But unlike securities, tax, workplace safety, and environmental-law regimes, which include criminal penalties for uniquely regulatory crimes, there is nothing highly technical or complex about condemning, for example, the distribution of dangerous drugs, the commission of violent acts, or, as relevant here, the possession of deadly weapons. These are areas in which the courts are well-equipped to operate, and we see no reason why we should abdicate our interpretive responsibility in such instances. We therefore decline to afford *Chevron* deference to the ATF's construction of the term "machinegun."

**C. The rule of lenity requires us to rule in Hardin's favor**

This brings us to the rule of lenity, under which "penal statutes are to be construed strictly." *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954). Therefore, when *Chevron* deference is not warranted and standard principles of statutory interpretation "fail to establish that the Government's position is unambiguously correct[,] we apply the rule of lenity and resolve the ambiguity in [the criminal defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). "In sum, it is not enough to conclude that a criminal statute *should* cover a particular act. The statute must *clearly* and *unambiguously* cover the act." *Cargill v. Garland*, 57 F.4th 447, 473 (5th Cir. 2023) (en banc) (Ho, J., concurring) (emphases in original).

Judge Ho's concurrence in *Cargill* directs our attention to two persuasive analogies. *See id.* at 473-74, 478. The first concerns designer drugs, which, although "just as lethal" as drugs prohibited by the Controlled Substances Act of 1970, "differed in chemical composition." *Id.* at 473. "Yet all three branches agreed that existing law did not ban designer drugs," requiring Congress to enact the Controlled Substance Analogue Enforcement Act of 1986. *Id.* at 473-74. The second analogy concerns the facts of *United States v. Wiltberger*, 18 U.S. 76 (1820). *See Cargill*, 57 F.4th at 478 (Ho, J., concurring). In that case, the Supreme Court "unanimously construed a statute that punished manslaughter on the 'high seas' not to apply to an identical act on a river. The Court noted that it was 'extremely improbable' Congress would want to treat upstream manslaughter differently from manslaughter committed downstream, past the river's mouth." *Id.* (quoting *Wiltberger*, 18 U.S. at 103-06). Even so, the Supreme Court ruled in the

criminal defendant's favor on the basis that "probability is not a guide which a court, in construing a penal statute, can safely take." *Wiltberger*, 18 U.S. at 105.

"Bump stocks may well be indistinguishable from automatic weapons for all practical purposes. But . . . '[i]t would be dangerous . . . to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated.'" *Cargill*, 57 F.4th at 478 (Ho, J., concurring) (second ellipses in original) (quoting *Wiltberger*, 18 U.S. at 96). Because the relevant statutory scheme does not clearly and unambiguously prohibit bump stocks, we are bound to construe the statute in Hardin's favor.

### III. CONCLUSION

For all of the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

---

**CONCURRING IN THE JUDGMENT**

---

JOHN K. BUSH, Circuit Judge, concurring in the judgment. I agree that the district court's judgment should be reversed. At a minimum, as the majority opinion holds, the National Firearms Act of 1934 admits of an interpretation that excludes a bump stock from the definition of a "part" of a "machinegun" under that statute. Indeed, this is the *original* interpretation that the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) gave to the statute. *See* ATF Rule 2006-2 at 2; 27 C.F.R. §§ 478.11 (2014), 479.11 (2016). That ATF later changed its views in order to ban bump stocks does not render unreasonable the ATF's first reading of the statute. Indeed, the ATF's first take aligns with the views of numerous judges on this court and elsewhere who have considered the relevant statutory text. *See, e.g.*, *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 910 (6th Cir. 2021) (Murphy, J., dissenting), *cert. denied*, 143 S. Ct. 83 (2022); *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc), *petition for cert. filed* (April 7, 2023). Therefore, even accepting (as does the majority opinion) that the statute could reasonably be read either way as to the legality of bump stocks, the statute *must* be read under the rule of lenity to exclude a bump-stock rifle from the definition of a machinegun. *See United States v. Granderson*, 511 U.S. 39, 54 (1994); *Jones v. United States*, 529 U.S. 848, 858 (2000) (if there are two possible "readings of what conduct Congress has made a crime," the "harsher alternative" reading should be rejected because "Congress should have spoken in language that is clear and definite") (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–22 (1952)). That is the import of the majority's reasoning.

But I would go further. As explained by Judge Murphy in *Gun Owners of America, Inc. v. Garland*, the best reading of the statute is that Congress never gave the ATF "the power to expand the law banning machine guns through [the] legislative shortcut" of the ATF's rule at issue in this appeal, *see* Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (the Rule). *See* 19 F.4th at 910 (Murphy, J., dissenting). Simply put, under the statute as it currently reads, the addition of a bump stock to a rifle clearly does not make it a machinegun.

Though my reasoning differs somewhat from the majority opinion, all judges on this panel agree on this point: it is up to Congress, not the ATF, to change the law if bump stocks are to be made illegal.

**I.**

This case turns on whether a bump stock is a "part" of a "machinegun" as used in the National Firearms Act. The relevant statutory provision reads:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). Under this definition, a bump stock cannot be a machinegun part because a bump stock by itself cannot increase the rate of fire of a rifle, nor does it change the mechanics of a "single function of the trigger."

The ATF's brief provides clarity on how bump stocks operate. A "bump stock channels the recoil from the first shot into a defined path, allowing the contained weapon to slide back a short distance . . . shifting the trigger away from the shooter's trigger finger." Appellee's Br. at 18 (citing 83 Fed. Reg. at 66,532 (Dec. 26, 2018)). "This separation allows the firing mechanism to reset." *Id.* The shooter must also "maintain constant forward pressure on the weapon's barrel-shroud or fore-grip . . . causing the trigger to 'bump' the shooter's stationary finger and fire another bullet." *Id.* This explanation reveals a couple of reasons why a bump stock does not transform a rifle into a machinegun.

First, a bump stock does not create all of the above-described effects itself—one still needs to maintain constant forward pressure on the weapon's barrel-shroud or fore-grip. Thus, a semiautomatic rifle does not shoot automatically and thereby become a machinegun, simply by having a bump stock. When the National Firearms Act was enacted, the word "automatically" meant "[h]aving a self-acting or self-regulating mechanism that performs a required act at a

predetermined point in an operation[.]" *Webster's New International Dictionary* (2d ed. 1934). While the bump stock might be a self-acting mechanism to allow the rifle to slide back, it is not a self-acting mechanism to maintain the forward pressure. Without that added technique, the bump stock would not increase the rate of fire, and the rifle therefore cannot be considered a machinegun because of the addition of a bump stock.

Second, the "single function of a trigger" on a rifle with a bump stock engages the internal firing mechanism to shoot only one shot, in contrast with the definition of a machinegun "automatically [shooting] more than one shot." 26 U.S.C. § 5845(b). Once a trigger is pulled, the hammer strikes the firing pin to shoot one bullet. *See Cargill v. Garland*, 57 F.4th at 452. Then, the hammer is thrusted backward by the bolt into the disconnector. *Id.* The hammer will stay in the disconnector until the trigger is reset to its original position. *Id.* This means that the "single function of the trigger" will only release one bullet because the trigger must reset each time before it can engage the hammer to strike the firing pin to release another bullet. In contrast, an automatic gun will continue to reset the hammer and release the hammer without the trigger resetting to its original position, so a "single function of a trigger" can lead to the shooting of multiple shots. *See id.* A bump stock does nothing to impact the internal mechanics of a rifle to circumvent the need for the trigger to reset between every shot, so a bump-stock-equipped rifle is still capable of shooting only one shot with each function of the trigger.

## II.

The ATF attempts to replace "single function of the trigger," as the definition reads in the National Firearms Act, with "single pull of the trigger." 83 Fed. Reg. at 66,518. This new agency-created definition, announced after high-profile statements from President Trump and others in response to the Las Vegas shooting,[1] is an about-face from the ATF's original interpretation of the statute. ATF Rule 2006-2 at 2; 27 C.F.R. §§ 478.11 (2014), 479.11 (2016).

---

[1]Presidential Memorandum on the Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices, President Donald Trump (Feb. 20, 2018) (on file with the White House Archives); Lindsey McPherson, *Pelosi Optimistic About Gun Control Bill Short of Assault Weapons Ban*, ROLL CALL, Mar. 1, 2018; Statement on Regulation to Ban Bump Stocks, Senator Dianne Feinstein (Dec. 18, 2018); Department of Justice Announces Bump-Stock-Type Devices Final Rule Press Release, Department of Justice Office of Public Affairs (Dec. 18, 2018).

There were no changes in the relevant facts or law that led to the ATF making a 180-degree change of statutory interpretation to ban what once was legal. There was only a profound change in political pressure.

Even if the ATF had adopted its current view from the get-go, that interpretation fits poorly with the statutory text. The ATF substitutes "pull" for "function" to argue that there is a single "pull" from the shooter's perspective. But the statutory definition defines "function" not with reference to the shooter but to the firearm, given the use of the word "trigger," which is a mechanical feature. From the firearm's mechanical perspective, the trigger must fully reset and be "pulled" every single time another shot is fired, so substitution of the ATF's new word, "pull" for "function," does not make a bump-stock rifle a machinegun. Even with the bump stock, the trigger of the rifle still must be pulled—that is, the trigger finger must move against the trigger while the shooter maintains forward pressure on the weapon's barrel-shroud or fore-grip—for each shot the weapon fires. *See Gun Owners of Am., Inc.*, 19 F.4th at 913–14, 926–27 (Murphy, J., dissenting). To be sure, the bump stock allows for multiple shots to occur more rapidly, but that consequence does not change the dispositive fact that each pull of the trigger fires only one shot. Because a single function of the trigger using a bump stock cannot fire more than one bullet, a bump-stock rifle is not a machinegun.

I therefore concur in reversing the district court judgment because the best reading of the statute is that bump stocks are legal. The statutory text confirms that the ATF correctly interpreted the statute the first time. It is the job of Congress, not the ATF, to decide whether the law should change in this area.