**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-1029
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

FRANKLIN MONROE JOKEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(August 10, 1992)

Before HIGGINBOTHAM, SMITH, and DEMOSS, Circuit Judges.

PER CURIAM:

Franklin Jokel appeals his conviction of possession of a shotgun and explosive mines that were unregistered and had no serial numbers, in violation of 26 U.S.C. §§ 5845(d) and (f) and 5861(d) and (i). Finding no error, we affirm.


I.

A sheriff's deputy had seized from Jokel's residence a shotgun that the government introduced at trial; also seized were four incomplete directional mines consisting of pipe nipples, end plugs,

and fuses, which could be converted into completed mines with the addition of explosive powder and metal shot. In the container in which deputies found the incomplete mines, deputies also found gunpowder and metal shot called Minie balls.

Jokel does not dispute that he manufactured the shotgun and pipe devices; he testified that he made them for his own use. He believed that, without a trigger, no device that he made would be a firearm within the meaning of the law. He used pipe material that he obtained from hardware and plumbing stores and that had been left at his house by a previous owner. He never intended to use any of his homemade devices as a weapon.

He did not think the shotgun had a trigger. He fired it by inserting a nail near the hammer in such a way that, when the hammer was released, it would fall forward and hit the nail.

Jokel testified that he owned black powder firearms, that is, ones that fire Minie balls. He also owned several cans of smokeless ball powder.

He also testified that he intended to use the pipe devices only to create smoke to detect opponents in paint ball war games; he intended to lay a trip cord in the area of the games. When a member of the opposing teams would walk over the cord, it would trip the pipe device, emitting smoke for his team to see. Jokel testified that neither the shotgun nor the four pipe devices had serial number or were registered.

Bureau of Alcohol, Tobacco, and Firearms (ATF) officer Curtiss H.A. Bartlett testified that the shotgun did not have a separate

2

and distinct trigger but had a mechanism that served the function of a trigger. With the insertion of a nail and a spring, which was a ready restoration, the shotgun did and would fire a shell. The shotgun is fired by pulling back a springed hinge as one would do with a trigger on a gun; the hinge would move forward to strike the firing pin (the nail), which would cause the shell to fire.

Bartlett testified, "It does not have a separate trigger. In this particular case, the hammer and the trigger are really the same piece. You just draw the hinge back and let it go. So the hinge serves as both the hammer and the trigger." That is, the hinge is the shotgun's triggering mechanism. The shotgun "can only fire a single shot with each function of the trigger." Thus, Bartlett in fact testified that the shotgun has a trigger.

AFT officer Jerry Taylor described the mines as being composed of pipe material, end plugs, and fuses. He also described the metal shot and the gunpowder that were found with the mines and that could make them operable.

## II.

Jokel argues that the evidence was insufficient to support the convictions. On such a claim, we examine the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in favor of the verdict. The evidence is sufficient if a reasonable trier of fact could have found that it established guilt beyond a reasonable doubt. Every reasonable hypothesis of innocence need not have been excluded, nor need the

3

evidence be entirely inconsistent with innocent conduct. <u>United States v. Vasquez</u>, 953 F.2d 176, 181 (5th Cir.), <u>cert. denied</u>, 112 S. Ct. 2288 (1992).

## A.

Jokel first argues that the evidence on counts 1 and 2 was insufficient to prove that the shotgun was a shotgun within the meaning of the statute, on the ground that it did not have a trigger. Section 5845(d) provides,

> The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to the fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

Jokel testified that he thought that the shotgun did not have a trigger. Bartlett testified that the hinge was a trigger. A reasonable jury certainly could have found Bartlett's testimony more persuasive than Jokel's. The evidence undoubtedly was sufficient.

## B.

By way of the foregoing sufficiency argument, Jokel seems to argue that the hinge was not a trigger within the meaning of section 5845(d). The statute does not define "trigger," and we are aware of no caselaw construing the statute in this regard.

4

Unless defined otherwise, words in a statute are given their common meanings. United States v. Chen, 913 F.2d 183, 189 (5th Cir. 1990). The numerous definitions of "trigger" include "a piece (as a lever) connected with a catch or detent as a means of releasing it . . .[;] the part of the action of a firearm moved by the finger to release the hammer or firing pin in firing . . .[;] a device that fires an explosive . . . functioning as or in a manner analogous to a trigger." Webster's Third New Int'l Dictionary of the English Language Unabridged 2444 (1971). Jokel cites an older, abridged dictionary in his attempt to show that a trigger must be a small lever pulled by a finger.

The ordinary meaning is not as restricted as Jokel argues. The ordinary meaning is that a trigger is a mechanism that is used to initiate the firing sequence. For example, the verb "to trigger" means "to cause the explosion of." Id.

To construe "trigger" to mean only a small lever moved by a finger would be to impute to Congress the intent to restrict the term to only one kind of trigger, albeit a very common kind. The language implies no intent to so restrict the meaning, and we will not read such intent into section 5845(d).

One might argue that, if either a narrow or a broad construction of a term could be applied, the rule of lenity requires that the former be used. The rule of lenity, however, is not to be used to reject a common sense meaning of a term. Otherwise, the intent of Congress would be defeated. Chen, 913 F.2d at 189.

5

C.

Next, Jokel argues that the jury instruction on counts 3 and 4 increased the government's burden and that the evidence was insufficient to meet the increased burden. The court first defined "destructive device" for the jury:

> The term "destructive device" means any explosive mine. A destructive device includes any combination of parts either designed or intended for use in converting any device into a destructive device and from which a destructive device may be readily assembled . . . .

The court then instructed as follows:

> For you to find the defendant guilty of the crime set out in Count 3, you must be convinced that the government has provided each of the following beyond a reasonable doubt:
>
> First, that the defendant knew that he had a destructive device in his possession;
>
> Second, that this destructive device was an explosive mine;
>
> Third, that the defendant knew of the characteristics of the destructive device, that it was an explosive mine;
>
> Fourth, that this was a destructive device, or a combination of parts from which a destructive device could be readily assembled, and;
>
> Fifth, that this destructive device was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether the defendant knew that a destructive device had to be registered.

The instruction on count 4 was identical, except for the fifth item, which stated, "Fifth, that this destructive device was not identified by a serial number. It does not matter whether defendant knew that the destructive device had to be identified by serial number."

6

Jokel construes the second and third items of the instruction to require that the government prove that the destructive devices were completed explosive mines. Section 5845(f) provides the following definition:

> The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled . . . .

The statute criminalizes possession of a completed mine or a thing that is readily convertible into a completed mine. The language of the district court's second and third enumerated instructions requires that the government prove that the devices were completed mines.

An instruction that increases the government's burden and to which the government does not object becomes the law of the case. United States v. Gordon, 876 F.2d 1121, 1125 (5th Cir. 1989). The government concedes that the instruction is the law of the case. Jokel argues accordingly that the evidence was insufficient to prove that the destructive devices were completed explosive mines.

Any one instruction, however, does not have meaning in isolation from the instructions that went before and came after it.

7

See United States v. Daniel, 957 F.2d 162, 169 (5th Cir. 1992); United States v. Cohen, 631 F.2d 1223, 1227 (5th Cir. 1980). Prior to giving the second and third enumerated instructions, the district court, pursuant to section 5845(f), defined a destructive device to include both completed mines and things readily convertible into mines.

In context, the questioned instruction conformed to the statute and did not increase the government's burden. The evidence was sufficient to prove that the devices were readily convertible into mines with the addition of only gun powder and shot, which were found with the devices.

AFFIRMED.