United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 21, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

02-30925

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ERNEST CAROL CAMP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before KING, Chief Judge, and HIGGINBOTHAM and BARKSDALE, Circuit
Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The United States appeals the FED. R. CRIM. P. 12(b) dismissal
of Ernest Camp's indictment for possession of a machine gun, in
violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2).  At issue is
whether the term "trigger" as used in 26 U.S.C. § 5845(b) (defining
"machine gun") includes a switch that starts a motor, causing a
modified semiautomatic rifle to automatically fire more than one
shot.  **VACATED and REMANDED.**

I.

Louisiana authorities executing a search warrant at Camp's
home seized firearms, illegal drugs, and drug-manufacturing

equipment. One firearm was a modified semiautomatic rifle; Camp had added an electrically-operated trigger mechanism (device).

When an added switch behind the original trigger was pulled, it supplied electrical power to a motor connected to the bottom of a fishing reel that had been placed inside the weapon's trigger guard; the motor caused the reel to rotate; and that rotation caused the original trigger to function in rapid succession. The weapon would fire until either the shooter released the switch or the loaded ammunition was expended.

The Bureau of Alcohol, Tobacco, and Firearms (ATF) tested the weapon and found it "capable of firing more than one shot, without manual reloading[,] by a single function of the trigger". (This finding corresponds with the definition of a machine gun found in 26 U.S.C. § 5845(b).) The ATF was able to cause the weapon to fire two three-shot bursts. As a result, the ATF concluded that the modified rifle was a "machine gun" for purposes of § 5845(b).

Camp was indicted for possession of a machine gun. *See* 18 U.S.C. §§ 922(o)(1) and 924(a)(2). He stipulated that he possessed the firearm, but contended it was not a "machine gun" as defined by § 5845(b). The district court treated this contention as a Rule 12(b) motion to dismiss; held an evidentiary hearing; and dismissed the indictment. It held: the "switch" was not a "trigger" for purposes of § 5845(b); the weapon required multiple functions of

2

the primary trigger; and, therefore, the weapon, as modified, was not a § 5845(b) machine gun.

## II.

The district court's application of the statute is reviewed *de novo*. **United States v. Jennings**, 195 F.3d 795, 797 (5th Cir. 1999), *cert. denied*, 530 U.S. 1245 (2000). Pursuant to § 5845(b), a "machine gun" is

> any weapon which shoots ... automatically more than one shot, without manual reloading, *by a single function of the trigger*. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added).

## A.

The term "trigger" is not defined by statute. **United States v. Jokel**, 969 F.2d 132, 135 (5th Cir. 1992), defined a trigger, as used in 26 U.S.C. § 5845(d)(shotguns), as any "mechanism ... used to initiate the firing sequence". *See also* **United States v. Fleischli**, 305 F.3d 643, 655 (7th Cir. 2002) (concerning machine gun, approving of **Jokel**'s definition), *cert. denied*, 123 S. Ct. 1923 (2003); **United States v. Evans**, 978 F.2d 1112, 1113 (9th Cir. 1992), *cert. denied*, 510 U.S. 821 (1993) (concerning machine gun,

3

defining trigger as "anything that releases the bolt to cause ... [the weapon] to fire" (internal quotation omitted; alteration in original)).

In *Jokel*, the defendant contended his firearm lacked a "trigger" because it required the insertion of a nail and spring in order to fire, rather than, as is traditional, pulling a small lever. Our court disagreed: "To construe 'trigger' to mean only a small lever moved by a finger would be to impute to Congress the intent to restrict the term to apply only to one kind of trigger, albeit a very common kind. *The language implies no intent to so restrict the meaning*...." 969 F.2d at 135 (emphasis added). It is undisputed that the switch in Camp's device "initiated the firing sequence".

Camp attempts to distinguish his firearm by noting there is another "trigger" — the rifle's original metal lever/trigger. He contends that, for purposes of § 5845(b), this original trigger is the operative one; and, because it functioned each time the rifle was fired, the rifle, as modified, did not become a machine gun. To accept this contention would allow transforming firearms into machine guns, so long as the original trigger was not destroyed. *See Fleischli*, 305 F.3d at 655 (dismissing as "puerile" defendant's contention that firearm was not machine gun because it used electrical, rather than traditional, trigger); *Evans*, 978 F.2d 1113 n.2 (same).

4

Camp also claims the switch is merely a legal "trigger activator". At the evidentiary hearing, an ATF Agent testified that "trigger activators" involve using springs that "force the trigger back to the forward position, *meaning that you have to separately pull the trigger each time you want to fire the gun*, but it gives the illusion of functioning as a machinegun". (Emphasis added.) According to the Agent, the ATF understands such trigger activators to be legal, insofar as they do not transform legal firearms into machine guns.

We reject Camp's contention that the switch on his firearm was a legal "trigger activator". As discussed, those activators described by the ATF Agent require a user to separately pull the activator each time the weapon is fired. Camp's weapon, however, required only one action — pulling the switch he installed — to fire multiple shots. This distinction is expressly contemplated by § 5845(b), which speaks of "shoot[ing] automatically more than one shot ... by a *single* function of the trigger". (Emphasis added.)

B.

Finally, Camp contends **Staples v. United States**, 511 U.S. 600 (1994), is relevant to whether his modified rifle was a machine gun. Pursuant to **Staples**, the Government must prove a defendant "*knew* the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun". **Id**. at 602

5

(emphasis added).  As the Government acknowledges, this is an issue for the proceedings on remand.

## III.

For the foregoing reasons, the dismissal of the indictment is **VACATED**; this matter is **REMANDED** for further proceedings consistent with this opinion.

*VACATED; REMANDED*

6