*1151 Guedes v. ATF , 356 F.Supp.3d 109, 129 n.3 (D.D.C. 2019) (rejecting challenges to the Final Rule's interpretations and the ATF's interpretive authority, noting the "ATF's clear authority to interpret and administer" the relevant statutes).
In addition to his explicit statutory authority, the Attorney General has been implicitly delegated interpretive authority to define ambiguous words or phrases in the NFA and the GCA. Congress did not define "automatically" or "single function of the trigger," and when Congress leaves terms in a statute undefined, the agency charged with administering that statute has been implicitly delegated the authority to clarify those terms.[8]
B. FINAL RULE INTERPRETATIONS
The Final Rule interprets "single function of the trigger" to mean "single pull of the trigger" and analogous motions, and it interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." 83 Fed. Reg. Having supplied those definitions, the Final Rule clarifies that bump-stock-type devices-like the Slide Fire device owned by Mr. Aposhian-are machine guns proscribed by law. The court examines each interpretation in turn.
1. "Single Function of the Trigger"
The statutory language "single function of the trigger" gives rise to the parties' dispute about what "function" means.[9] Mr. Aposhian contends that "function" refers to the mechanical movement of the trigger, while the Final Rule adopts a shooter-focused interpretation. Because bump-stock-type devices operate through multiple movements of the trigger (by rapidly "bumping" the trigger into the operator's finger), a mechanically-focused interpretation would omit bump-stock-type devices from the statute's definition.
The court finds that "single pull of the trigger" is the best interpretation of "single function of the trigger," a conclusion similarly reached by the Eleventh Circuit Court of Appeals. See Akins v. United States , 312 F. App'x 197, 200 (11th Cir. 2009) ("The interpretation by the [ATF] that the phrase 'single function of the trigger' means a 'single pull of the trigger' is consonant with the statute and its legislative history."); see also Guedes , 356 F.Supp.3d at 130 ("Tellingly, courts have instinctively reached for the word 'pull'
*1152 when discussing the statutory definition of 'machinegun.' ").
Moreover, it makes little sense that Congress would have zeroed in on the mechanistic movement of the trigger in seeking to regulate automatic weapons. The ill sought to be captured by this definition was the ability to drastically increase a weapon's rate of fire, not the precise mechanism by which that capability is achieved. At oral argument, defendants persuasively argued that the unusual choice of "function" is intentionally more inclusive than "pull." Thus, "function" was likely intended by Congress to forestall attempts by weapon manufacturers or others to implement triggers that need not be pulled, thereby evading the statute's reach.[10]
2. "Automatically"
The Final Rule interprets "automatically" to mean "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single pull of the trigger." This interpretive language is borrowed, nearly word-for-word, from dictionary definitions contemporaneous to the NFA's enactment. See 83 Fed. Reg. 66519. The 1934 Webster's New International Dictionary defines the adjectival form "automatic" as "[h]aving a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation[.]" 187 (2d ed. 1934); see also 1 Oxford English Dictionary 574 (1933) (defining "automatic" as "[s]elf-acting under conditions fixed for it, going of itself").
And as with "a single pull of the trigger," the Final Rule's interpretation of "automatically" accords with past judicial interpretation. See United States v. Olofson , 563 F.3d 652, 658 (7th Cir. 2009) (relying on the same dictionary definitions to conclude that "the adverb 'automatically,' as it modifies the verb 'shoots,' delineates how the discharge of multiple rounds from a weapon occurs: as the result of a self-acting mechanism ... that is set in motion by a single function of the trigger and is accomplished without manual reloading.").
Mr. Aposhian's argument in opposing the propriety of this interpretation is difficult to follow, but it appears to relate to the requisite degree of automaticity. Specifically, he suggests that "[i]f a firearm requires separate physical input, even if not directed to the trigger mechanism , this still disrupts the automatic firing of each successive shot." (ECF No. 10 at 9 ) (emphasis in original). Because bump-stock-type devices require constant forward pressure by the shooter's non-trigger hand on the barrel or the shroud of the rifle, Mr. Aposhian argues, it does not fire "automatically."
But even weapons uncontroversially classified as machine guns require at least some ongoing effort by an operator. And Mr. Aposhian does not argue that the constant rearward pressure applied by a shooter's trigger finger in order to continue firing a machine gun means that it does not fire "automatically." Under Mr. Aposhian's view, it seems, the statute encompasses machine guns that require some, but not too much, ongoing physical actuation. But neither the statute nor the contemporaneous understanding of "automatic" provides any basis for an interpretation that restricts the degree of shooter involvement in an automatic process. As illustrated by the atextual line urged by Mr. Aposhian, any limit on the degree of physical input would invariably be supplied of *1153 whole cloth in service of one's desired result.
The Final Rule's interpretation of "automatically" is consistent with its ordinary meaning at the time of the NFA's enactment and accords with judicial interpretation of that language. Thus, it represents the best interpretation of the statute.
3. Classification of Bump-Stock-Type Devices as Machine Guns
Mr. Aposhian does not appear to argue that the interpretations above, if valid, would not permit the classification of his Slide Fire device as a machine gun. He does, however, request more aggressive judicial review of the Final Rule because of its allegedly political impetus, and because it represents a change in the ATF's position (i.e. , some devices previously ruled by the ATF to not be machine guns are now brought within the statutory ambit).
But the Supreme Court's modern administrative law jurisprudence expressly rejects both propositions. See F.C.C. v. Fox Television Stations, Inc. , 556 U.S. 502, 523, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) (rejecting argument that heightened scrutiny applies to a "policy change [that] was spurred by significant political pressure from Congress"); Lockheed Martin Corp. v. Admin. Review Bd., Dep't of Labor , 717 F.3d 1121, 1131 (10th Cir. 2013) ("The Supreme Court has rejected the notion that an agency's interpretation of a statute it administers is to be regarded with skepticism when its position reflects a change in policy."). Indeed, an agency's change in position need only be accompanied by the agency's acknowledgement that its position has changed, along with an explanation that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." F.C.C. , 556 U.S. at 515, 129 S.Ct. 1800 (emphasis in original).
The ATF's change in policy easily meets this standard. The Final Rule unambiguously acknowledges that the ATF is changing its position with respect to certain bump-stock-type devices, and explains that the ATF's prior rulings excluding those devices from the definition of machine gun "did not provide substantial or consistent legal analysis regarding the meaning of the term 'automatically,' as it is used in the NFA and GCA." 83 Fed. Reg. 66518. And the court has already determined that the definitions leading to the classification changes are permissible under, and in fact represent the best interpretation of, the statute. In sum, neither the alleged political genesis of the Final Rule nor the fact that it reflects a change in agency policy serve to undermine the Final Rule's validity.
Having found that each component of the Final Rule represents the best interpretation of the statute, the court cannot find that Mr. Aposhian is likely to succeed on the merits of his challenge to the Final Rule. Absent such a showing, an injunction may not issue.
IV. ORDER
For the reasons articulated, plaintiff's Motion for Preliminary Injunction is DENIED.

The notion that an undefined or ambiguous term amounts to an implicit delegation of interpretive power is borne, unmistakably, from the administrative law doctrine announced by Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In setting forth this principle in its memorandum in opposition, however, defendants went out of their way to avoid citing Chevron and its progeny, and repeatedly stressed that they neither request, nor believe their interpretations are entitled to, any measure of deference. See Defs.' Mem. in Opp'n (ECF No. 25 at 29 ) (citing United States v. Apel , 571 U.S. 359, 369, 134 S.Ct. 1144, 186 L.Ed.2d 75 (2014) (remarking that the Supreme Court has never accorded deference to an agency's internal reading of a criminal statute) ). This opinion is puzzling because it is far from settled that an agency is entitled to no deference when its interpretations implicate criminal liability. See United States v. White , 782 F.3d 1118, 1135 n.18 (10th Cir. 2015) (collecting Supreme Court and Tenth Circuit cases applying at least some deference to interpretations that affect criminal penalties). The court need not confront this deference dilemma here because the Final Rule's clarifying definitions reflect the best interpretation of the statute.

The court in Guedes noted, and this court agrees, that "dictionaries from the time of the NFA's enactment are of little help in defining a 'single function of the trigger.' " Guedes , 356 F.Supp.3d at 130.

The Final Rule's interpretation does use "pull," but avoids the issue above by interpreting " 'single function of the trigger' to mean 'single pull of the trigger' and analogous motions [.]" 83 Fed. Reg. at 66515 (emphasis added).