# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2021

Lyle W. Cayce
Clerk

No. 20-51016

Michael Cargill,

*Plaintiff—Appellant*,

*versus*

Merrick Garland, U.S. Attorney General; United States Department of Justice; Regina Lombardo, in her official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; Bureau of Alcohol, Tobacco, Firearms, and Explosives,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-349

Before Dennis, Higginson, and Costa, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

On October 1, 2017, a gunman firing several semiautomatic rifles equipped with bump stocks killed 58 people and wounded 500 more in Las Vegas. In the aftermath of this tragedy, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") promulgated a rule (the "Bump Stock Rule" or "Rule") stating that bump stocks are "machinegun[s]" for purposes of the National Firearms Act ("NFA") and the federal statutory

No. 20-51016

bar on the possession or sale of new machine guns.[1] *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018); *see also* 18 U.S.C. §§ 922(o)(1), 921(a)(23); 26 U.S.C. § 5845(b). Plaintiff-Appellant Michael Cargill has challenged the Rule, arguing that it contradicts the plain language of the statute, that it exceeds ATF's statutory authority, and that it violates the separation of powers. After a trial, the district court rejected Cargill's claims, concluding in a 75-page order that the Rule "properly classifies a bump stock as a 'machinegun' within the statutory definition." Because we agree with the district court that bump stocks qualify as machine guns under the best interpretation of the statute, we AFFIRM.[2]

---

[1] Except when quoting sources, we use the two-word spelling of "machine gun."

[2] Three other circuits have also rejected challenges to the Bump Stock Rule. In April 2019, the D.C. Circuit denied a motion for a preliminary injunction against the Rule, concluding that the statutory definition of "machinegun" is ambiguous and that the Rule is entitled to *Chevron* deference. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1 (D.C. Cir. 2019) (per curiam). One judge dissented, arguing that the Rule contradicts the statute's plain language. *Id.* at 35 (Henderson, J., dissenting). The Supreme Court denied certiorari, 140 S. Ct. 789 (2020), though Justice Gorsuch issued a statement arguing that the Rule is not entitled to *Chevron* deference. *Id.* at 789-91 (Gorsuch, J., statement regarding denial of certiorari). In May 2020, the Tenth Circuit denied another motion to preliminarily enjoin the Rule, for similar reasons as the D.C. Circuit. *Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020). Four months later, the Tenth Circuit vacated that opinion and granted a rehearing en banc, 973 F.3d 1151 (10th Cir. 2020) (en banc), but it subsequently reversed course, vacating the order granting rehearing en banc and reinstating the original panel opinion. *Aposhian v. Wilkinson*, 989 F.3d 890 (10th Cir. 2021) (en banc). Five judges dissented from the decision to vacate the en banc order. *Id.* at 891 (Tymkovich, C.J. dissenting, joined by Hartz, Holmes, Eid, and Carson, JJ.). The plaintiff in that case has filed a petition for certiorari in the Supreme Court. Petition for Writ of Certiorari, *Aposhian v. Garland*, No. 21-159 (U.S. Aug. 4, 2021). Finally, in March 2021, a Sixth Circuit panel granted a preliminary injunction against the Rule, holding that the Rule is not entitled to *Chevron* deference and is not the best interpretation of the NFA. *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 450 (6th Cir. 2021). However, the Sixth Circuit vacated that decision, 2 F.4th 576 (6th Cir. 2021) (en banc), and an evenly divided en banc court affirmed the district court's judgment upholding the Rule. No. 19-1298, --- F.4th ----, 2021

No. 20-51016

I.

A.

Federal law generally makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). The federal machine gun ban incorporates the NFA's definition of "machinegun," 18 U.S.C. § 921(a)(23), which reads as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

Congress has vested in the Attorney General authority to prescribe rules and regulations necessary to enforce the NFA and the federal machine gun ban. *See* 18 U.S.C. § 926(a); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a). The Attorney General has delegated this responsibility to ATF. *See* 28 C.F.R. § 0.130(a)(1)-(2).

B.

As the district court found, a "bump stock" is "an accessory attached to a firearm to increase its rate of fire, to make it easier for somebody to fire a weapon faster." More specifically, bump stocks are devices that "harness the

---

WL 5755300 (6th Cir. Dec. 3, 2021) (en banc); *see Gun Owners of Am. v. Barr*, 363 F. Supp. 3d 823, 826 (W.D. Mich. 2019).

No. 20-51016

force of recoil to enable a weapon to fire multiple rounds when, while keeping the trigger finger stationary, the shooter pushes forward with the non-shooting hand." These devices generally consist of "a sliding shoulder stock molded or otherwise attached to a grip," "a 'trigger ledge,' on which the shooter places his finger," and "a detachable rectangular receiver module that goes in the receiver well of the bump stock's handle to guide the recoil of the weapon when fired." The "firing sequence" of a semiautomatic rifle equipped with a bump stock "begins when the shooter presses forward on the firearm to initially engage the trigger finger." The gun then "slides back and forth[,] and its recoil energy *bumps* the trigger finger into the trigger to continue firing until the shooter stops pushing forward with his non-shooting hand or the weapon runs out of ammunition or malfunctions." (emphasis added). Thus, "when a bump stock is used as intended, the shooter pushes forward to engage the trigger finger with the trigger, which causes a single trigger pull that initiates a firing sequence that continues to fire as long as the shooter continues to push forward." *See also* 83 Fed. Reg. at 66,516 ("Shooters use bump-stock-type devices with semiautomatic firearms to accelerate the firearms' cyclic firing rate to mimic automatic fire.").

Prior to the 2017 mass shooting in Las Vegas, ATF had maintained that bump stocks that did not use internal springs, such as the device used in the Las Vegas shooting, were not machine guns for purposes of federal law. 83 Fed. Reg. at 66,516. However, after the Las Vegas shooting, ATF decided to reconsider that position, and it issued an advance notice of proposed rulemaking in December 2017. *Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices*, 82 Fed. Reg. 60,929 (Dec. 26, 2017). Shortly thereafter, then-President Donald Trump issued a memorandum instructing the Department of Justice "to propose for notice and comment a rule banning all devices that turn legal weapons into machineguns." *Application of the Definition of Machinegun to "Bump Fire"*

4

*Stocks and Other Similar Devices*, 83 Fed. Reg. 7,949, 7,949 (Feb. 20, 2018). ATF issued a notice of proposed rulemaking in March 2018, *Bump-Stock Devices*, 83 Fed. Reg. 13,442 (Mar. 29, 2018), and, after receiving more than 186,000 comments, promulgated a final rule in December 2018. 83 Fed. Reg. at 66,514, 66,519.[3]

The Bump Stock Rule interprets the NFA's above-quoted definition of "machinegun." *See* 26 U.S.C. § 5845(b). The Rule states:

> For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions.

83 Fed. Reg. at 66,553 (codified at 27 C.F.R. §§ 447.11, 478.11, 479.11). Based on this interpretation of the terms "automatically" and "single function of the trigger," the Rule concludes that the "term 'machinegun' includes a bump-stock-type device," since bump stocks enable "a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter." *Id.* at 66,553-54.

---

[3] The Bump Stock Rule was signed by Acting Attorney General Matthew G. Whitaker. *Id.* at 66,554. Subsequently, parties challenging the rule argued that Whitaker had not been validly serving as Acting Attorney General. *Bump-Stock-Type Devices*, 84 Fed. Reg. 9,239, 9,240 (March 14, 2019). To resolve any uncertainty about the Rule's legitimacy, newly-sworn-in Attorney General William Barr issued a statement in March 2019 saying that he had evaluated "the rulemaking record" and "personally come to the conclusion that it is appropriate to ratify and affirm the [Rule]." *Id.*

No. 20-51016

By its own terms, the Rule became "effective" on March 26, 2019, ninety days after its promulgation. *Id.* at 66,514. The Rule explains that "individuals are subject to criminal liability only for possessing bump-stock-type devices *after* the effective date of regulation," and it instructs bump stock owners to either "undertake destruction of the devices" or "abandon [them] at the nearest ATF office." *Id.* at 66,525, 66,530.

C.

Following the issuance of the Bump Stock Rule, Michael Cargill surrendered two bump stocks to ATF. He then sued ATF under the Administrative Procedure Act and various constitutional provisions, seeking a declaratory judgment and permanent injunction preventing the enforcement of the Bump Stock Rule against him and others similarly situated, along with the return of his bump stocks.

After holding a bench trial, the district court denied Cargill's requested relief on all counts. The court first determined that ATF had statutory authority to issue the Bump Stock Rule and that the Rule did not violate the constitutional principles of non-delegation and separation of powers. The court then concluded that the Bump Stock Rule adopts the "correct" interpretation of the terms "automatically" and "single function of the trigger." Accordingly, the court held that the Rule "properly classifies a bump stock as a 'machinegun' within the statutory definition." Cargill timely filed this appeal.

II.

We first consider the statutory interpretation issue. Recall that, for purposes of federal law, "[t]he term 'machinegun' means any weapon which shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger," including "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use

6

No. 20-51016

in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). Cargill argues that the Bump Stock Rule's conclusion that bump stocks qualify as "machinegun[s]" under this definition contradicts the statute's unambiguous terms. Cargill further argues that even if the statute is ambiguous, the rule of lenity requires the court to resolve any ambiguity in his favor. The district court rejected these arguments, concluding that the "Rule adopts the proper interpretation of 'machinegun' by including bump stock devices" and that "the rule of lenity does not apply." We agree with the district court's conclusions.[4]

A.

Cargill argues that bump stocks unambiguously are not "machinegun[s]" under the above statutory definition because semiautomatic firearms equipped with bump stocks (1) do not shoot "more than one shot . . . by a single function of the trigger" and (2) do not shoot "automatically." We consider each of these points in turn.

1.

Cargill argues that bump stock-equipped semiautomatic rifles do not shoot "more than one shot . . . by a single function of the trigger" because the trigger of such weapons must mechanically "reset" before the gun can

---

[4] Cargill also argues that if the statute is ambiguous, the Bump Stock Rule is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), reasoning primarily that *Chevron* does not apply to cases involving criminal statutes and that ATF explicitly waived *Chevron* in the district court. Because we conclude that bump stocks are "machinegun[s]" under the best interpretation of the statute, we do not address whether the Rule is entitled to deference. *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114 (2002) (explaining that "there is no occasion to defer and no point in asking what kind of deference, or how much" would apply in cases where an agency has adopted "the position we would adopt even if there were no formal rule and we were interpreting the statute from scratch").

"fire the next shot." Cargill thus appears to interpret the phrase "single function of the trigger" to mean "a single mechanical act of the trigger" or perhaps "a single movement of the trigger." On the other hand, the Bump Stock Rule provides that "'single function of the trigger' means a single pull of the trigger and analogous motions." 83 Fed. Reg. at 66,553.

The Rule's interpretation of the statutory phrase proves compelling. Both the Supreme Court and this court have replaced the word "function" with "pull" when paraphrasing the NFA's definition of "machinegun." S*ee Staples v. United States*, 511 U.S. 600, 602 n.1 (1994) (observing that the NFA treats a weapon that "fires repeatedly with a single pull of the trigger" as a machinegun, in contrast to a "weapon that fires only one shot with each pull of the trigger"); *United States v. Anderson*, 885 F.2d 1248, 1250 (5th Cir. 1989) (en banc) (explaining that "fully automatic pistols ... qualify as 'machine guns'" under the NFA because "they will fire more than one round of ammunition in response to a single pull of the trigger").[5] Indeed, at the time the statute was enacted, the two terms were used almost interchangeably in the context of firearms. *See* H.R. Rep. No. 73-1780, at 2 (1934) (explaining that the NFA "contains the usual definition of machine gun as a weapon designed to shoot more than one shot without reloading and by a single pull of the trigger"); *National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. On Ways & Means*, 73d Cong. 40 (1934) [hereinafter *NFA Hearings*] (statement of Karl T. Frederick, President, National Rifle Association of America) ("A gun . . . which is capable of firing more than one shot by a single pull of the trigger, a single function of the trigger, is properly

---

[5] *See also Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 130 (D.D.C.), *aff'd*, 920 F.3d 1 (D.C. Cir. 2019), *cert. denied*, 140 S. Ct. 789 (2020) ("Tellingly, courts have instinctively reached for the word 'pull' when discussing the statutory definition of 'machinegun.'" (citing *Staples*, 511 U.S. at 602 n.1; *United States v. Oakes*, 564 F.2d 384, 388 (10th Cir. 1977)).

regarded, in my opinion, as a machine gun."). Accordingly, in a case involving a predecessor rule to the Bump Stock Rule, the Eleventh Circuit expressly held that ATF's "interpretation . . . that the phrase 'single function of the trigger' means a 'single pull of the trigger' is consonant with the statute." *Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009) (unpublished) (citing *Staples*, 511 U.S. at 602 n.1; *NFA Hearings* at 40). This caselaw and contemporary usage reflect a simple fact undergirding the Rule's interpretation of the statute—in ordinary English, firearm triggers typically "function" by means of a shooter's "pull."[6]

The Chief Judge of the Tenth Circuit makes perhaps the strongest case that the NFA defines "machinegun" in terms of a trigger's mechanical acts. Writing in dissent, he argues that the "statute's plain language makes clear the 'function' must be '*of the trigger*.' The statute speaks only to how the trigger acts, making no mention of the shooter." *Aposhian v. Wilkinson*, 989 F.3d 890, 895 (10th Cir. 2021) (Tymkovich, C.J., dissenting from vacation of order granting rehearing en banc) (citation omitted). He continues:

> The trigger on [a semiautomatic rifle equipped with a bump stock] must necessarily "pull" backwards and release the rifle's hammer every time that the rifle discharges. The rifle cannot fire a second round until both the trigger and hammer reset. Every shot requires the trigger to go through this full process again. The fact that a bump stock accelerates this

---

[6] *See, e.g.*, OLIVER WENDELL HOLMES, JR., THE COMMON LAW: LECTURE IV 149-50 (1881) (explaining that "[t]he ordinarily intelligent and prudent member of the community would foresee the possibility of danger from pointing a gun which he had not inspected into a crowd, and pulling the trigger, although it was said to be unloaded").

No. 20-51016

process does not change the underlying fact that it requires
multiple functions of the trigger to mimic a machine gun.

*Id.* (cleaned up).

We considered a similarly mechanistic interpretation of § 5854(b) in
*United States v. Camp.* That case involved a firearm that operated as follows:

> When an added switch behind the original trigger was pulled,
> it supplied electrical power to a motor connected to the bottom
> of a fishing reel that had been placed inside the weapon's
> trigger guard; the motor caused the reel to rotate; and that
> rotation caused the original trigger to function in rapid
> succession.

343 F.3d 743, 744 (5th Cir. 2003). The gunowner argued that because the
"original trigger . . . functioned each time the rifle was fired, the rifle, as
modified, did not become a machine gun." *Id.* at 745. "The switch," he
averred, "is merely a legal 'trigger activator.'" *Id.* However, we held that
because the modified weapon "required only one action—pulling the switch
[the gunowner] installed—to fire multiple shots," the weapon "shoot[s]
automatically more than one shot . . . by a *single* function of the trigger." *Id.*
(third alteration in original) (quoting 26 U.S.C. § 5845(b)). To hold
otherwise, we explained, "would allow transforming firearms into machine
guns, so long as the original trigger was not destroyed." *Id.*

Our court thus rejected a mechanistic interpretation of § 5845(b) in
*Camp.* We likewise decline to adopt a mechanistic reading of the statute, for
several reasons in addition to the precedent set by *Camp.* As an initial matter,
the mechanistic interpretation of the NFA twists the statutory text,
effectively rewriting the statute to make "function" a verb that has "trigger"
as its subject—that is, rewriting the statute so that it defines a "machinegun"
as a weapon which shoots more than one shot "every time the trigger
functions" rather than "by a single function of the trigger." Moreover,

10

interpreting the NFA mechanistically defies common sense. As one district court has observed, there is no reason why "Congress would have zeroed in on the mechanistic movement of the trigger in seeking to regulate automatic weapons," given that the "ill sought to be captured by this definition was the ability to drastically increase a weapon's rate of fire, not the precise mechanism by which that capability is achieved." *Aposhian v. Barr*, 374 F. Supp. 3d 1145, 1152 (D. Utah 2019), *aff'd*, 958 F.3d 969 (10th Cir. 2020), *petition for cert. filed sub nom. Aposhian v. Garland*, No. 21-159 (U.S. Aug. 4, 2021). Congress likely chose the term "function" not to emphasize the mechanical working of the trigger but rather because it has a broader meaning than "pull," in order "to forestall attempts by weapon manufacturers or others to implement triggers that need not be pulled, thereby evading the statute's reach." *Id.*[7] Finally, the mechanistic interpretation of the statute does not account for the above-discussed arguments relating to prior judicial interpretations and ordinary usage. For these reasons, ATF's interpretation of the statute is the best interpretation. The phrase "single function of the trigger," as used in the NFA, means "a single pull of the trigger and analogous motions."

Accordingly, Cargill's argument that semiautomatic firearms equipped with bump stocks do not shoot "more than one shot . . . by a single function of the trigger" fails. As explained above, the district court found that "when a bump stock is used as intended, the shooter pushes forward to

---

[7] To that end, ATF defined "single function of the trigger" as "a single pull of the trigger *and analogous motions*," 83 Fed. Reg. at 66,553 (emphasis added), recognizing "that there are other methods of initiating an automatic firing sequence that do not require a pull." *Id.* at 66,515. ATF encourages gun manufacturers to submit novel weapons and devices to the agency so that the agency can inform manufacturers in advance of production whether it considers the weapon or device to be a machine gun. *See* ATF, U.S. Dep't of Justice, *National Firearms Act Handbook* 41 (Apr. 2009).

engage the trigger finger with the trigger, which causes a single trigger pull that initiates a firing sequence that continues to fire as long as the shooter continues to push forward."[8] Or in the words of the Rule, "when a shooter who has affixed a bump-stock-type device to a semiautomatic firearm pulls the trigger, that movement initiates a firing sequence that produces more than one shot." 83 Fed. Reg. at 66,519. Because bump stocks thus allow a shooter to shoot more than one shot by a single pull of the trigger, they allow a shooter to shoot "more than one shot . . . by a single function of the trigger." 26 U.S.C. § 5845(b).

2.

Cargill further argues that because the shooter must "push the barrel shroud forward with the non-trigger hand into the trigger against the gun's recoil after every shot," semiautomatic weapons equipped with bump stocks do not fire "automatically." Cargill thus appears to interpret the term "automatically" to mean "completely without manual input." On the other hand, the Bump Stock Rule provides that the term "automatically," as used in the statutory definition of "machinegun," "means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger." 83 Fed. Reg. at 66,553.

Once again, the Rule offers a compelling interpretation of the statute. "We often look to dictionary definitions for help in discerning a word's ordinary meaning." *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). According to one leading dictionary from 1934, the year

---

[8] Importantly, after initiating the firing sequence in this manner, the "shooter does not have to pull rearward to continue firing as long as he keeps his finger on the trigger ledge." Indeed, the district court quoted an expert as testifying that "the trigger finger 'could be replaced by a post and would function the same way.'"

the NFA was enacted, "automatically" is the adverbial form of "automatic," which in turn means "[h]aving a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation." WEBSTER'S NEW INTERNATIONAL DICTIONARY 187 (2d ed. 1934). Another dictionary from the time defines "automatic" as "[s]elf-acting under conditions fixed for it, going of itself." OXFORD ENGLISH DICTIONARY 574 (1933). Relying on these definitions, the Seventh Circuit has explained that for purposes of the NFA, "the adverb 'automatically' . . . delineates how the discharge of multiple rounds from a weapon occurs: as the result of a self-acting mechanism" which "is set in motion by a single function of the trigger and is accomplished without manual reloading." *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009). As a nearly word-for-word copy of the dictionary definition that accords with past judicial interpretation, the Rule's interpretation of "automatically" is the best interpretation of that term.[9]

The Chief Judge of the Tenth Circuit again makes the strongest case against the Rule's interpretation of the statute. He argues that it is a mistake to "abstract[] 'automatically' from the rest of the statutory language." *Aposhian*, 989 F.3d at 896 (Tymkovich, C.J., dissenting). After all, "[t]he statute is unambiguous about what makes the firearm shoot automatically: the function of the trigger." *Id.* Accordingly, "[i]f a single function of the trigger *and then some other input* is required to make the firearm shoot automatically, we are not talking about a 'machinegun' as defined in § 5845(b)." *Id.* And, he explains, bump stocks require this extra input:

> [I]f a shooter pulls the trigger of a semiautomatic rifle equipped with a non-mechanical bump stock without doing anything

---

[9] Indeed, the Rule explicitly relied on these dictionary definitions and the Seventh Circuit's *Olofson* opinion when interpreting "automatically." *See* 83 Fed. Reg. at 66,519.

else, the rifle will fire just one shot. . . . To make the firearm "shoot automatically more than one shot", the shooter must also be pulling forward on the barrel of the gun. Because a bump stock requires this extra physical input, it does not fall within the statutory requirement that the weapon shoot "automatically . . . by a single function of the trigger."

*Id.* (citations omitted).

Though not unreasonable on its face, the claim that a weapon does not fire "automatically" if it requires any manual input from the shooter beyond a single pull of the trigger in order to fire more than one shot ultimately proves too much. True, a shooter firing a semiautomatic firearm equipped with a bump stock generally must maintain "constant forward pressure with the non-trigger hand on the barrel-shroud or fore-grip of the rifle." 83 Fed. Reg. at 66,516. However, as the district court explained, a prototypical machine gun requires the shooter to "keep constant pressure on the trigger with his shooting hand's trigger finger." Cargill offers no reason why firearms that require the shooter to maintain pressure on the trigger function "automatically" but firearms that require the shooter to maintain pressure on the barrel of the gun do not. Accordingly, we reject this interpretation of the statute. A firearm functions "automatically" as long as it "function[s] as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger," 83 Fed. Reg. at 66,553, regardless of whether a shooter must maintain pressure on the weapon while firing.

Recall that the district court found that after a shooter pulls the trigger of a bump stock-equipped semiautomatic rifle to initiate the weapon's firing sequence, the gun "slides back and forth[,] and its recoil energy bumps the trigger finger into the trigger to continue firing until the shooter stops pushing forward with his non-shooting hand or the weapon runs out of

ammunition or malfunctions." The district court further found, based on expert testimony, that "even though the shooter's finger disengages and re-engages with the trigger during the bump firing process, the sequence set in motion by the initial forward pressure causing a trigger pull continues. Multiple rounds fire because '[t]he weapon recoils faster than you can react.'" Or as the Rule itself explains, a bump stock "harness[es] the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter." 83 Fed. Reg. at 66,553-54. For these reasons, semiautomatic firearms equipped with bump stocks shoot "as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger"—in other words, they shoot "automatically" for purposes of the statute. 26 U.S.C. § 5845(b).

## B.

Cargill argues that even if the statutory text is ambiguous, ATF's interpretation of the NFA is invalid because the court must resolve any ambiguity in this criminal statute in his favor under the rule of lenity. *See Yates v. United States*, 574 U.S. 528, 547-48 (2015) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."). However, "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the [c]ourt must simply guess as to what Congress intended." *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). Here, for the reasons explained above, the traditional tools of statutory interpretation make it clear that the Bump Stock Rule's interpretation of the NFA's definition of "machinegun" is the

No. 20-51016

best interpretation of the statute. Because no "grievous ambiguity or uncertainty" remains, *id.*, the rule of lenity does not apply to this case.[10]

* * *

A bump stock is "a part designed and intended" to enable a person armed with a semiautomatic rifle to "shoot[] . . . automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Accordingly, we agree with the district court that the Bump Stock Rule properly classifies bump stocks as "machinegun[s]" for purposes of federal law. *Id.*; *see also* 18 U.S.C. § 921(a)(23).[11]

III.

Cargill argues that ATF exceeded its statutory authority by issuing the Bump Stock Rule. Cargill further argues that even if the agency had statutory authority to issue the Rule, the Rule violates the constitutional principle of separation of powers. The district court concluded that Congress had

---

[10] Though the district court concluded that "the traditional tools of statutory interpretation yield unambiguous meanings" for the disputed terms, we hold only that the statute does not contain the kind of grievous ambiguity that causes the rule of lenity to apply.

[11] Though we conclude that the Bump Stock Rule offers the best interpretation of the NFA's definition of "machinegun," Congress may wish to further clarify whether various novel devices qualify as machine guns for purposes of federal law. In accordance with the statutory opinion transmission project, our Opinion Clerk will notify Congress that this opinion "bears on technical matters of statutory construction." *See* Robert A. Katzmann & Russell R. Wheeler, *A Mechanism for "Statutory Housekeeping": Appellate Courts Working with Congress*, 9 J. App. Prac. & Process 131 (2007) (describing the history and purpose of the statutory opinion transmission project); Marin K. Levy & Tejas N. Narechania, *Interbranch Information Sharing: Examining the Statutory Opinion Transmission Project*, 108 Cal. L. Rev. 917, 921 (2020) (encouraging "federal appellate judges to send more opinions to Congress").

delegated authority to ATF to issue a rule like the Bump Stock Rule and that this Congressional delegation does not violate the separation of powers.

We do not address these issues. As explained above, the Bump Stock Rule's interpretation of the NFA's definition of "machinegun" is the best interpretation of the statute. Accordingly, resolution of these issues will not affect the outcome of the case—either way, bump stocks are "machinegun[s]" and thus illegal under federal law. 18 U.S.C. § 922(o)(1). And because Cargill's ability to own a bump stock would not change even if his claims that ATF exceeded its statutory authority and that the Rule violates the separation of powers were vindicated, Cargill has no standing to pursue these claims in federal court.[12] *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) (explaining that, in order to have standing, plaintiffs must "show injury to 'a particular right of their own, as distinguished from the public's interest in the administration of the law'" (quoting *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 125 (1940))); *California v. Texas*, 141 S. Ct. 2104, 2112 (2021) ("We do not reach these questions of the Act's validity, however, for Texas and the other plaintiffs in this suit lack the standing necessary to raise them.").

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[12] Cargill does not argue that Congress cannot outlaw bump stocks.